UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

—————

CORNELL MCCREARY,

                Plaintiff,                Case No. 1:11-cv-1298

v.                                    Honorable Robert J. Jonker

K. BECKER et al.,

                Defendants.

_____/

## OPINION DENYING LEAVE
## TO PROCEED *IN FORMA PAUPERIS* - THREE STRIKES

        Plaintiff Cornell McCreary, a prisoner incarcerated at Bellamy Creek Correctional Facility (IBC), filed a complaint pursuant to 42 U.S.C. § 1983.  Plaintiff seeks leave to proceed *in forma pauperis* (docket #2).  Because Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious or for failure to state a claim, he is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g).  The Court will order Plaintiff to pay the $350.00 civil action filing fee within twenty-eight (28) days of this opinion and accompanying order, and if Plaintiff fails to do so, the Court will order that his action be dismissed without prejudice.  Even if the case is dismissed, Plaintiff will be responsible for payment of the $350.00 filing fee in accordance with *In re Alea*, 286 F.3d 378, 380-81 (6th Cir. 2002).

## Discussion

        The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's

request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners – many of which are meritless – and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress put into place economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal, though the statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." *Id.* The Sixth Circuit has upheld the constitutionality of the "three-strikes" rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation.

*Wilson v. Yaklich*, 148 F.3d 596, 604-06 (6th Cir. 1998); *accord Pointer v. Wilkinson*, 502 F.3d 369, 377 (6th Cir. 2007) (citing *Wilson*, 148 F.3d at 604-06); *Rodriguez v. Cook*, 169 F.3d 1176, 1178-82 (9th Cir. 1999); *Rivera v. Allin*, 144 F.3d 719, 723-26 (11th Cir. 1998); *Carson v. Johnson*, 112 F.3d 818, 821-22 (5th Cir. 1997).

Plaintiff has been an active litigant in the federal courts in Michigan.  In at least three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that Plaintiff's claims were frivolous or failed to state a claim.  *See McCreary v. Bell et al.,* No. 1:10-cv-1211 (W.D. Mich. Sept. 30, 2011); *McCreary v. Cox et al.*, No. 2:04-cv-72677 (E.D. Mich. Aug. 13, 2004); *McCreary v. Perry*, No. 2:02-cv-72038 (E.D. Mich. May 25, 2002).  Thus, Plaintiff has three strikes under § 1915(g).

Furthermore, Plaintiff's action does not fall under the exception for an inmate under "imminent danger of serious physical injury."  28 U.S.C. § 1915(g).  Plaintiff's allegations concern events occurring while he was incarcerated at Oaks Correctional Facility (ECF), and the virtually all of the individuals named as Defendants are employees of ECF.[1]  Plaintiff alleges that from October 2009 through November 2011, while he was at ECF, Defendants put his life in danger by not screening the inmates who were assigned to his cell.  On December 20, 2009, Plaintiff's cell-mate attacked him and a prison guard ignored Plaintiff's requests for help.  After the attack, Plaintiff requested his own cell for protection, but his request was denied.  On March 23, 2010, Plaintiff's cell-mate "bugged out and threatened" him in front of prison officials.  (Compl. ¶ 13, docket #1.) Plaintiff again requested his own cell, but his request was denied.

---

[1] Defendant Caruso, who is sued in her personal capacity, is not an employee of ECF.  She is the former Director of the MDOC.  Plaintiff also sues the MDOC.

Plaintiff further alleges that Defendants did not provide adequate medical care for the injuries that he received during the attack in 2009, namely, a broken arm, a dislocated ankle, and a broken leg.  He now has metal rods in his ankle and leg.  He alleges that his arm is now deformed because the treating physician put a cast on his arm rather than repairing the bones that were broken inside the arm.  His arm now hurts when he uses it.  Defendants refused to provide further treatment to correct his arm.  Defendants also refused to provide Plaintiff with medically-ordered shoes that would ease the pain he feels when he walks on his injured ankle.

Plaintiff also alleges that he has been harassed by prison officials at ECF.  On one occasion, Assistant Resident Unit Supervisor (ARUS) Benjelink shook down his cell, broke Plaintiff's headphones, and threatened to destroy Plaintiff's television.  On another occasion, Benjelink conspired to put Plaintiff in a cell with prisoner Williams, "a problem inmate who [w]as moved []numerous times and [is] a mental [h]ealth [p]risoner [who] cannot get along with other prisoners."  (Compl. ¶ 28.)  Later, in November 2011, Benjelink conspired with Sgt. McLendon to write a threatening behavior misconduct against Plaintiff.  Plaintiff was found not guilty of the misconduct, but a prison officer confiscated his television while he was in segregation before the misconduct hearing.  Plaintiff attempted to grieve the confiscation of his television, but officials failed or refused to respond.  Plaintiff was transferred out of ECF to IBC on November 22, 2011.

Congress did not define "imminent danger" in the PLRA, but it is significant that Congress chose to use the word "imminent," a word that conveys the idea of immediacy.  "Imminent" is "Near at hand . . . impending; on the point of happening; threatening, menacing, perilous.  Something which is threatening to happen at once, something close at hand, something to happen upon the instant . . . and on the point of happening."  BLACK'S LAW DICTIONARY, 514-15

- 4 -

(6th ed. 1991). "Imminent" is also defined as "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 1130 (1976). "Imminent danger" is "such an appearance of threatened and impending injury as would put a reasonable and prudent man to his instant defense." BLACK'S LAW DICTIONARY, 515 (6th ed. 1991).

The Sixth Circuit has recognized the standard previously adopted by other circuit courts:

> While the Sixth Circuit has not defined the term "imminent danger" for purposes of this section, other Circuits have held that to meet the requirement, the threat or prison condition "must be real and proximate" and the danger of serious physical injury must exist at the time the complaint is filed. *See, e.g., Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 313 (3d Cir. 2001) (en banc). Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception. *Id.* Other Circuits also have held that district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are "conclusory or ridiculous," *Ciarpaglini*, 352 F.3d at 331, or are "'clearly baseless' (i.e. are fantastic or delusional and rise to the level of 'irrational or wholly incredible).'" *Gibbs v. Cross*, 160 F.3d 962, 967 (3d Cir.1998) (quoting *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

*Rittner v. Kinder*, 290 F. App'x 796, 797-98 (6th Cir. 2008). Assertions of past danger do not satisfy the imminent danger requirement; thus, Plaintiff's allegations that prison officials mistreated him on past occasions are not sufficient to meet the exception. *See Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007); *see also Vandiver v. Vasbinder*, 416 F. App'x 560, 561-62 (6th Cir. 2011) (imminent danger must be contemporaneous with the complaint's filing). This is particularly true given that Plaintiff's allegations pertain to events occurring at a facility other than his current place of incarceration. *See Day v. Maynard*, 200 F.3d 665, 667 (10th Cir. 1999). Similarly, even though

Plaintiff continues to suffer consequences from the denial of adequate medical treatment, his allegations concern past conduct rather than present risk of harm. Now that he is incarcerated at IBC, Defendants (i.e., employees of ECF and the former director of the MDOC) are not responsible for his present care.[2]

Furthermore, even assuming that prison officials continue to deny Plaintiff adequate medical treatment, there is no indication that he is presently at risk of serious physical injury. Although Congress also did not define "serious physical injury," various courts have interpreted the meaning of the phrase. In *Ibrahim v. District of Columbia*, 464 F.3d 3, 7 (D.C. Cir. 2006), the D.C. Circuit concluded that a "chronic disease that could result in serious harm or even death constitutes 'serious physical injury.'" *Id.* Similarly, in *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004), the Eleventh Circuit found that HIV and Hepatitis C, both chronic and potentially fatal diseases, met the "serious physical injury" requirement. Moreover, in *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003), the Seventh Circuit recognized that "heart palpitations, chest pains, labored breathing, choking sensations, and paralysis in . . . legs and back" resulting from a denial of medication constituted a serious physical injury. *Id.* The Eighth Circuit also has addressed the question, concluding that a spreading infection in the mouth that resulted from a lack of proper dental treatment amounted to a serious physical injury. *McAlphin v. Toney*, 281 F.3d 709, 710 (8th Cir. 2002). Plaintiff's non-specific allegations regarding pain in his arm and leg are not nearly as serious as the alleged injuries at issue in *Ibrahim*, *Brown*, *Ciarpaglini*, or *McAlphin*, and there is no

---

[2]Plaintiff also sues the MDOC, but the MDOC enjoys immunity from suit under the Eleventh Amendment. *See McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).

indication that his condition will lead to a more serious injury if it is left untreated.  Thus, any harm, or risk thereof, resulting from the present failure to treat Plaintiff cannot be described as serious and imminent under § 1915(g).

For the foregoing reasons, therefore, § 1915(g) prohibits Plaintiff from proceeding *in forma pauperis* in this action.  Plaintiff has twenty-eight (28) days from the date of entry of this order to pay the entire civil action filing fee, which is $350.00.  When Plaintiff pays his filing fee, the Court will screen his complaint as required by 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c).  If Plaintiff fails to pay the filing fee within the 28-day period, his case will be dismissed without prejudice, but he will continue to be responsible for payment of the $350.00 filing fee.

Dated:     January 17, 2012       /s/ Robert J. Jonker         
                                         ROBERT J. JONKER
                                         UNITED STATES DISTRICT JUDGE

**SEND REMITTANCES TO THE FOLLOWING ADDRESS**:
Clerk, U.S. District Court
399 Federal Building
110 Michigan Street, NW
Grand Rapids, MI 49503

**All checks or other forms of payment shall be payable to "Clerk, U.S. District Court."**